IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **NICOLE WEISZ,** § | |
| § | |
| **Plaintiff,** § | |
| **v.** § | |
| § | Case No. 4:23-cv-541-ALM-AGD |
| **CCT HOLDINGS, LLC** § | |
| **AND MICHAEL EYMER,** § | |
| **INDIVIDUALLY,** § | |
| § | |
| **Defendants.** § | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Plaintiff Nicole Weisz files her motion for default judgment against Defendant CCT Holdings, LLC ("CCT"), and in support thereof would show the following:

**I.
INTRODUCTION**

1. This is a suit to recover unpaid overtime compensation brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

2. Plaintiff brought suit against two Defendants: CCT Holdings, LLC and CCT's owner, director and registered agent, Michael Eymer. While Plaintiff has successfully served CCT Holdings, LLC (as set forth in more detail below), Plaintiff has been unsuccessful in serving Defendant Eymer. As such, this default is against CCT Holdings, LLC only.

3. Plaintiff attempted service on Defendant CCT's registered agent Michael Eymer on July 13, 2023 via certified mail. The address Plaintiff used was the address listed for CCT with the Colorado Secretary of State's office. The certified letter was returned "refused." ECF

No. 5-1, ¶¶ 3-4.

4. Plaintiff then attempted **in-person** service on Defendant CCT's registered agent Michael Eymer in September 2023, at the address listed for CCT's registered agent with the Colorado Secretary of State, but the process server was told Mr. Eymer did not reside at the registered agent's address. ECF No. 5-1, ¶ 5.

5. On September 27, 2023, Plaintiff then attempted to have Direct Results Legal Services serve CCT via certified mail at **CCT's principal office mailing address,** which is listed with the Colorado Secretary of State as 250 W. Jewell, Denver Colorado, 80223. That certified letter came back with the notation "No such address" on November 8, 2023. ECF No. 5-1, ¶ 6.

6. On November 16, 2023, Plaintiff then attempted to have CCT served by certified mail on Mr. Eymer at the **Registered Agent for CCT's mailing address**, which is listed with the Colorado Secretary of State as PO Box 998, Kittridge Colorado 80457. The certified letter came back with the notation "refused" on November 30, 2023. ECF No. 5-1, ¶ 7.

7. Under Colorado Rev. Civ. Stat. § 7-90-704 (2)(c)[1], if a registered agent is not present at the registered agent's designated address, then service is effectuated five days after mailing the summons to the registered agent's listed address.

---

[1] Colorado Rev. Civ. Stat. 7-90-704, Service on Entities, reads as follows:
(1) The registered agent of an entity is an agent of the entity authorized to receive service of any process, notice, or demand required or permitted by law to be served on the entity. The registered agent of an entity is an agent of the entity to whom the secretary of state may deliver any form, notice, or other document with respect to the entity under this title, unless otherwise specified by an organic statute.
(2) If an entity that is required to maintain a registered agent pursuant to this part 7 has no registered agent, or if the registered agent is not located under its registered agent name at its registered agent address, or if the registered agent cannot with reasonable diligence be served, the entity may be served by registered mail or by certified mail, return receipt requested, addressed to the entity at its principal address. Service is perfected under this subsection (2) at the earliest of:
(a) The date the entity receives the process, notice, or demand;
(b) The date shown on the return receipt, if signed on behalf of the entity; or
(c) Five days after mailing.

8. Based on the above, at the earliest, Defendant CCT was served five days after July 13, 2023, which would have been July 18, 2023.  At the latest, Defendant CCT was served five days after November 16, 2023, which would have been November 21, 2023. Assuming the later date for service of process, then Defendant CCT's answer would have been due December 12, 2023. As of the date of Plaintiff's Request for the Clerk to Enter Default, which was December 22, 2023, Defendant CCT had not answered, Defendant CCT was in default, and Plaintiff sought to have the clerk issue a default against Defendant CCT. ECF No. 5.

9. In yet another attempt to serve Defendant CCT, because Defendant CCT employed Plaintiff in Texas and therefore transacts business in Texas but has no registered agent for service of process on file with the Texas Secretary of State, Plaintiff served the Texas Secretary of State with a summons and copy of this lawsuit. ECF No. 7. The Texas Secretary of State was served on January 9, 2024, and Defendant CCT's answer was therefore due on January 30, 2024. Today is June 4, 2024, and Defendant CCT has not filed an answer or made an appearance.   A copy of the Texas Secretary of State's Certificate of Service is attached hereto as Exhibit A.

10. Because Defendant CCT has failed to file an Answer or otherwise make an appearance, Plaintiff thus seeks a default judgment against CCT.

## II.

## **PLAINTIFF'S DAMAGES**

### *Unpaid Wages*

11. Plaintiff claims unpaid overtime compensation as allowed under the FLSA, a statute that establishes a comprehensive federal regulatory scheme providing employees with minimum wage, overtime and child labor protections.

12. In pertinent part, the FLSA requires employers to pay each covered employee time and a half the employee's regular rate of pay for hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207. Specifically, pursuant to the FLSA, no employer shall employ any employee who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for her employment in excess of the hours above specified at a rate not less than one-half times the regular rate at which he or she is employed. 29 U.S.C. § 207(a)(1).

13. Plaintiff Nicole Weisz is a former sales representative employed by CCT and her declaration is filed with this motion as Exhibit B (hereinafter "Weisz Decl at ¶__").

14. In her declaration, Ms. Weisz states that she worked for CCT as a sales representative, and that she was tasked with arranging cannabis tours and sightseeing events in and around the Denver area. Weisz Decl. at ¶4.

15. Ms. Weisz states that she was employed by CCT from approximately April 1, 2019 through March 14, 2023. Weisz Decl. at ¶3. She states that while she began working with CCT on

April 1, 2019, she did not start working more than 40 hours per week without any overtime compensation until on or about October 1, 2020.   Weisz Decl. at ¶5.

16. Ms. Weisz states that she stopped working more than 40 hours per week on or about December 12, 2021, and then started working unpaid overtime again beginning May 27, 2022.  Weisz Decl. at ¶¶6-7.  The second period of time during which she worked unpaid overtime ended on or about October 12, 2022.  Weisz Decl. at ¶7.

17. During the first period of time in which she worked unpaid overtime, beginning on or about October 1, 2020, she states that she began working 7.5-hour shifts seven days per week, or approximately 52.5 hours per week.   Weisz Decl. at ¶5.

18. She states that her pay fluctuated during this period of time based on the number of hours she worked.  Weisz Decl. at ¶6.  She also stated that both she and CCT agreed that her compensation was only intended to cover 40 hours or less per week.  Weisz Decl. at ¶6.

19. During this period of time, she states that, on average, she earned approximately $1,065.00 per week from October 1, 2020 through December 12, 2021, which is when she stopped working more than 40 hours per week.   Weisz Decl. at ¶6.

20. The parties' contemplation that Weisz's pay was to compensate her only for hours of 40 or less per week therefore weighs against applying the Fluctuating Work Week ("FWW") method to calculate overtime premiums in this case (in addition to the fact that her pay during this period varied based on quantity of hours worked).  *Black v. SettlePou, P.C.*, 732 F.3d 492, 500 (5th Cir. 2013). Instead, hours worked above 40 per week should be based on the standard "time-and-a-half" calculation. *Id.*; 29 U.S.C. § 207(a)(1).  For each hour over 40 in a workweek that Weisz worked, she was entitled to 1.5 times her regular rate, or $30.42 per hour in unpaid overtime.

21. Weisz states that $1,065 divided by 52.5 hours per week comes to a regular hourly rate of $20.28. Weisz Decl. at ¶6. Multiplied by 1.5, she states that her overtime rate would be $30.42 per hour. Weisz Decl. at ¶6. Multiplied by 12.5 hours per week, she states that her weekly unpaid overtime comes to $380.25. Weisz Decl. at ¶6. She states that there are 62 weeks between October 1, 2020 and December 12, 2021, and that $380.25 in unpaid overtime per week x 62 weeks comes to $23,575.50. Weisz Decl. at ¶6.

22. She states that she did not start working unpaid overtime (more than forty hours per week) again until May 27, 2022. Weisz Decl. at ¶7. At this time, she states that she began working approximately 56 hours per week, which generally consisted of 8-hour shifts, seven days per week. Weisz Decl. at ¶7. She states she stopped working more than 40 hours per week on or about October 12, 2022, a period of 19 weeks. Weisz Decl. at ¶7.

23. During this time, she states she was paid $1,000 per week, but that again, both she and CCT agreed that her compensation was only to cover up to 40 hours or less per week, and that there was no agreement that her compensation was to cover all hours worked, whether above or below 40 hours per workweek. Weisz Decl. at ¶8.

24. As such, all hours worked over forty per week during this period should be paid at time and one-half Weisz's regular rate. *Black v. SettlePou, P.C.*, 732 F.3d 492, 500 (5th Cir. 2013); 29 U.S.C. § 207(a)(1). Weisz states that $1,000 divided by 56 hours comes to a regular rate of $17.85, which, when multiplied by 1.5, comes to an overtime rate of $26.77. Weisz Decl. at ¶8. $26.77 multiplied by 16 overtime hours comes to $428.32 in unpaid overtime each week. Weisz Decl. at ¶8. $428.32 x 19 weeks comes to $8,138.08 in actual damages. Weisz Decl. at ¶8.

25. Total actual damages for both periods of time in which Ms. Weisz worked unpaid overtime hours comes to $31,713.58. Weisz Decl. at ¶8.

### *Liquidated Damages*

26. In addition to her unpaid wages, Plaintiff seeks an additional equal amount of liquidated, or "double" damages as allowed under the FLSA. Plaintiffs are routinely entitled to receive double damages in an amount equal to the unpaid overtime on their FLSA claims.

27. Section 216(b) of the FLSA provides for liquidated damages as follows:

> **"Any employer who violates the provisions of this title shall be liable to the employee or the employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount of liquidated damages."**

29 U.S.C. § 216(b) (emphasis added).

28. Liquidated damages are "compensatory, not punitive in nature." *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir.), *cert. denied*, 474 U.S. 902 (1985). The FLSA originally made such damages mandatory. *See, Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 581 (1942). However, the Portal-to-Portal Act, made doubling discretionary rather than mandatory, by permitting a court to withhold liquidated damages in an action to recover unpaid minimum wages "if the employer shows ... that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that her act or omission was not a violation of the FLSA." Even so, there is still a "strong presumption in favor of doubling." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) (double damages are the norm, single damages the exception).

29. An employer bears a "substantial burden" in proving this defense, which contains what has

been described as subjective and objective components.[2] *Brock v. Shirk*, 833 F.2d 1326, 1330 (9th Cir. 1987), *vacated on other grounds*, 488 U.S. 806 (1988). A court must award liquidated damages if the employer fails to meet this burden. *Id*. at 1331; *First Citizens Bank*, 758 F.2d at 403. Even if an employer demonstrates that it acted in good faith, a court nonetheless has the discretion to award liquidated damages for a violation of the FLSA. *See, e.g., Peters v. City of Shreveport*, 818 F.2d 1148, 1167 (5th Cir. 1987), *cert. denied*, 485 U.S. 930 (1988).

30. To satisfy the "good faith" prong of a liquidated damages defense, an employer must offer evidence that it had an honest good faith intention to determine the requirements of the FLSA and then follow them. *Beebee v. United States*, 226 Ct.Cl. 308, 640 F.2d 1283, 1925 (1981). Liquidated damages are mandatory absent such a showing. *Id.; Renfro v. City of Emporia,* 948 F.2d 1529, 1540 (10th Cir. 1991) (district court has no discretion to mitigate liquidated damages in such a case).

31. Even if an employer were to prove subjective "good faith," to avoid paying liquidated damages, the employer must next prove "reasonable grounds" for the acts or omissions which violated the FLSA.

32. Whether CCT had "reasonable grounds" must be evaluated by an objective test. *Renfro*, 948 F.2d at 1540. It is clear that an employer may not rely upon ignorance as a reasonable ground for believing that its actions did not violate the FLSA. *Brennan v. General Motors*

---

[2] To satisfy the subjective good faith component, the employer must show that it had an honest intention of ascertaining what the FLSA required and to act in accordance with it. *First Citizens Bank*, 758 F.2d at 1072. The question of "honest intention" is an inquiry that is essentially factual. *Id*. On the other hand, determining the reasonableness of the employer's belief involves applying the proper interpretation of the FLSA and supporting regulations to uncontested facts – a legal determination. *Id*. The employer must, of course, prove both to avoid liquidated damages. *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990) ("An employer has the burden of showing that the violation of the [FLSA] was in good faith and that the employer had reasonable grounds for believing that no violation took place. Absent such a showing, liquidated damages are mandatory").

*Acceptance Corporation,* 482 F.2d 825 (5th Cir. 1973); *Barcellona v. Tiffany English Pub*, 597 F.2d 464, 468-69 (5th Cir. 1979).

33. Because CCT has chosen not to take any action, CCT has failed to prove either subjective good faith or objective reasonable grounds for its failure to pay Plaintiff overtime compensation. Therefore, Plaintiff is entitled to an award of liquidated damages.

### *Attorney's Fees*

34. Under the FLSA, the District Court awards reasonable attorney's fees to the prevailing party. A court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant...." *See* 29 U.S.C. § 216(b). Though the attorney's fee provision of the FLSA does not mention "prevailing party," the Fifth Circuit typically cites prevailing party fee-shifting jurisprudence in FLSA cases. *See, e.g., Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379, 404 (5th Cir. 2002).

35. The Fifth Circuit uses the lodestar method to calculate an appropriate attorney's fee award under the FLSA. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar method consists of multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work (*See Shipes v. Trinity Industries,* 987 F.2d 311, 319-20 (5th Cir. 1993)).

36. Here, attorney Douglas B. Welmaker represents the Plaintiff. Mr. Welmaker states that he has expended in excess of 21.90 hours on this case. Mr. Welmaker states that his reasonable hourly rate is $650.00 (see Declaration of Douglas B. Welmaker attached as Exhibit C), for an initial total of $14,235.00. A printout of time spent in relation to this matter is attached to the declaration as Attachment 1 to Exhibit B, and Mr. Welmaker has deducted $3,000.00 from the actual time spent due to the exercise of billing judgment. As

9

such, Plaintiff seeks $11,235.00 for attorney time spent prosecuting the case.

## *Costs*

37. Plaintiff also seeks $1,130.85 in taxable costs, which include costs expended to file suit in federal district court ($402.00), and costs for service of process ($728.85). *See* Attachment 2 to Exhibit B.

## III.

## PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully asks the Court to grant her Motion for Default Judgment against Defendant CCT Holdings, LLC and award the following damages:

- $31,713.58 in unpaid wages for Nicole Weisz;
- $31,713.58 in liquidated damages for Nicole Weisz;
- $11,235.00 for reasonable and necessary attorney's fees; and
- $1,130.85 for court costs;
- Plaintiff therefore requests a judgment against Defendant CCT Holdings, LLC of $75,793.01; and
- Plaintiff seeks all other relief, legal or equitable, to which she may show herself justly entitled.

Respectfully submitted,

WELMAKER LAW, PLLC


/s/  Douglas B. Welmaker
Douglas B. Welmaker
Attorney-in-Charge
State Bar No. 00788641
Welmaker Law, PLLC
409 N. Fredonia, Suite 118
Longview, Texas 75601
Phone: (512) 799-2048
Email: doug@welmakerlaw.com


**ATTORNEY FOR PLAINTIFF**


**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion for Default Judgment has been served on Defendant CCT Holdings, LLC via the following method at the address below on June 4, 2024:

Via Certified Mail and Regular Mail

CCT Holdings, LLC
C/O its registered agent:
Michael Eymer
250 W. Jewell, Denver Colorado, 80223
-and-
PO Box 998, Kittridge Colorado 80457


/s/ Douglas B. Welmaker
Douglas B. Welmaker

11