# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| NICOLE WEISZ, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:23-CV-541-ALM-AGD |
| v. | § | |
| | § | |
| CCT HOLDINGS, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the court is Plaintiff Nicole Weisz's Motion for Default Judgment as to Defendant CCT Holdings, LLC ("CCT") (Dkt. #10). Having reviewed the Motion (Dkt. #10) and all other relevant filings, the court recommends that the Motion for Default Judgment (Dkt. #10) be granted. The court further recommends that Defendant Michael Eymer be dismissed for failure to serve.

## BACKGROUND

*Factual History*

Weisz alleges that Defendants operate a tour company in the cannabis tourism industry headquartered in Denver, Colorado (Dkt. #1 at p. 5). Weisz worked remotely for Defendants as a sales representative, and often averaged between 55 and 60 work hours per week (Dkt. #1 at p. 5). Weisz further alleges that she and Defendants agreed that her pay was compensation for 40 hours of work per week (Dkt. #1 at p. 5; Dkt. #15 at p. 2). Weisz finally alleges that Defendants did not pay Weisz for hours worked over 40 hours per week during two periods of her employment (Dkt. #1 at p. 5; Dkt. #15 at p. 2).

*Procedural History*

On June 12, 2023, Weisz filed a Complaint in the Eastern District of Texas, Sherman Division alleging that Defendants failed to pay wages in accordance with the Fair Labor Standards Act ("FLSA") (Dkt. #1 at p. 5). On July 12, 2023, summons was issued for Defendants (Dkt. #3; Dkt. #4). On January 30, 2024, Weisz returned summons as executed as to CCT, reflecting that CCT was served on January 9, 2024, via the Texas Secretary of State (Dkt. #7). On February 2, 2024, Weisz requested a clerk's entry of default as to CCT, (Dkt. #8), which the clerk's office entered the same day (Dkt. #9). On June 4, 2024, Weisz filed a Motion for Default Judgment as to CCT, (Dkt. #10; Dkt. #11), which is presently before the court. To date, CCT has not responded or otherwise appeared.

On June 6, 2024, the court entered a Notice of Impending Dismissal because "more than 350 days have passed from the filing of the Complaint" and "Defendant Michael Eymer [("Eymer")] has not been served." (Dkt. #12 at p. 1). The Notice included language stating that "[i]f dismissal of the case as to the unserved Defendant is satisfactory to Plaintiff, no action is required" and that "[f]ailure to respond will result in a recommendation of dismissal of this case as to the unserved Defendant for failure to prosecute." (Dkt. #12 at p. 2) (emphasis omitted). To date, Weisz has not served Eymer or filed a petition as ordered.

On January 2, 2025, the court ordered Weisz to provide additional documents and briefing because, as filed, "the court is unable to ascertain the correct amount of damages, if any." (Dkt. #13). On January 31, 2025, Weisz filed a Supplement to the Motion for Default Judgment (Dkt. #15). Weisz states that, "while there was no written contract for the period . . . of May 27, 2022 through October 12, 2022, the terms of Weisz's employment for this period are reflected in an email attached as Exhibit 1 to Weisz's Supplemental Declaration." (Dkt. #15 at p. 2). Weisz further

states that "[w]ith respect to the [c]ourt's second and third inquiries, Plaintiff was indeed a salaried employee during the period in question, but this fact in and of itself is not dispositive." (Dkt. #15 at p. 2).

## LEGAL STANDARDS

### *Federal Rule of Civil Procedure 55*

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. Securing a default judgment involves a three-step procedure: (1) the defendant's default; (2) the entry of default; and (3) the entry of default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A "default" occurs when the defendant does not plead or otherwise respond to the complaint. *Id.* An "entry of default" is the notation the clerk makes after the default is established by affidavit. *Id.*

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes omitted); *see AAR Supply Chain Inc. v. N & P Enters., LLC*, No. 3:16-CV-2973, 2017 WL 5626356, at *1 (N.D. Tex. Nov. 22, 2017) (explaining that default judgments "are available only when the adversary process has been halted because of an essentially unresponsive party") (citation and internal quotation marks omitted). While "[t]he Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments," this policy "is 'counterbalanced by considerations of social goals, justice, and expediency, a weighing process that lies largely within the domain of the trial judge's discretion.'" *Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. v3:12-CV-2092-M, 2013 WL 145502, at *2 (N.D. Tex. Jan. 14, 2013) (cleaned up) (quoting *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir.

1999)). Rule 55(b)(2) grants district courts wide latitude in this determination, and the entry of default judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). And even though entry of a default judgment is reviewed for abuse of discretion, *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018), because of "the seriousness of a default judgment, . . . even a slight abuse of discretion may justify reversal." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 n.1 (5th Cir. 1992) (brackets omitted) (quoting *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 734 (5th Cir. 1984)).

***Federal Rule of Civil Procedure 4(m)***

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "The burden of showing good cause is on the plaintiff." *Gartin v. Par Pharm. Companies, Inc.*, 561 F. Supp. 2d 670, 682 (E.D. Tex. 2007), *aff'd*, 289 F. App'x 688 (5th Cir. 2008) (internal quotation marks and citation omitted). "If the plaintiff does not show good cause, the court can either dismiss the case or extend the time for service." *Id.*

Additionally, a district court may dismiss an action for failure to prosecute or to comply with any order of the court. *Campbell v. Wilkinson*, 988 F.3d 798, 800 (5th Cir. 2021); FED. R. CIV. P. 41(b). The exercise of the power to dismiss for failure to prosecute is committed to the sound discretion of the court, and appellate review is confined solely to whether the court's discretion was abused. *Green v. Forney Eng'g Co.*, 589 F.2d 243, 247 (5th Cir. 1979); *Lopez v. Aransas Cnty. Indep. Sch. Dist.*, 570 F.2d 541, 544 (5th Cir. 1978). "Not only may a district court

4

dismiss for want of prosecution upon motion of a defendant, but it may also *sua sponte* dismiss an action whenever necessary to 'achieve the orderly and expeditious disposition of cases.'" *Anthony v. Marion Cnty. Gen. Hosp.*, 617 F.2d 1164, 1167 (5th Cir. 1980) (citation omitted).

## ANALYSIS

The court first finds that Weisz's claims against Eymer should be dismissed without prejudice pursuant to Federal Rules of Civil Procedure 4(m) and 41(b) for failure to serve and failure to comply with a court order. The court also finds that Weisz's Motion for Default Judgment (Dkt. #10) as to CCT should be granted.

   I.   ***Defendant Eymer has not been served and should thus be dismissed.***

At the outset, the court finds that Weisz's claims against Eymer should be dismissed without prejudice pursuant to Federal Rules of Civil Procedure 4(m) and 41(b) for failure to serve and failure to prosecute.

Service of process in a federal action is governed by Rule 4 of the Federal Rules of Civil Procedure. Specifically, Rule 4(m) governs the timing of service:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Here, on June 6, 2024, the court entered a Notice of Impending Dismissal because "more than 350 days have passed from the filing of the Complaint" and "Defendant Michael Eymer has not been served." (Dkt. #12 at p. 1). The Notice included language stating that "[i]f dismissal of the case as to the unserved Defendant is satisfactory to Plaintiff, no action is required" and that "[f]ailure to respond will result in a recommendation of dismissal of this case as to the unserved Defendant for failure to prosecute." (Dkt. #12 at p. 2) (emphasis omitted). To date, Weisz has not

5

served Eymer or filed a petition as ordered. Accordingly, there are sufficient grounds for dismissal under Federal Rule 4. FED. R. CIV. P. 4(m).

Additionally, the court ordered Weisz to properly serve Eymer or file a petition regarding service. To date, Weisz has not done so. Accordingly, Weisz's claims against Eymer should also be dismissed for failure to prosecute. FED. R. CIV. P. 41(b).

## II. *Weisz's Motion for Default Judgment as to CCT should be granted.*

Because CCT has not answered or otherwise appeared and because Weisz obtained an entry of default, Weisz has met the first two requirements for a default judgment. Thus, the only remaining issue is whether a default judgment is warranted. *N.Y. Life Ins. Co.*, 84 F.3d at 141. Courts in the Fifth Circuit utilize a three-part test to determine whether a default judgment is appropriate: (1) whether the entry of default is procedurally warranted, (2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and (3) what form of relief, if any, a plaintiff should receive. *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citations omitted). Applying this framework, the court finds that default judgment as to CCT is appropriate.

### a. Whether Default Judgment is Procedurally Warranted

The court must first determine whether default judgment is procedurally warranted. The Fifth Circuit in *Lindsey* recognized six factors relevant to the inquiry of whether default judgment is procedurally warranted:

> whether material issues of fact exist; whether there has been substantial prejudice; whether the grounds for default are clearly established; whether the default was caused by a good faith mistake or excusable neglect; the harshness of a default judgment; and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). After reviewing Weisz's Motion and all other relevant filings, the court finds that default judgment is procedurally warranted because the grounds for default are established, CCT will not be substantially prejudiced, and there is no evidence of a good faith mistake by CCT.

### i. Material Disputes of Fact

There are no material disputes of fact present in this case as to these parties. In the event of default, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal citations omitted). Here, because CCT did not answer Weisz's Complaint or otherwise appear, CCT admits Weisz's well-pleaded allegations of fact, except regarding damages, as explained below. Therefore, there are no material disputes of fact.

### ii. Substantial Prejudice or Harsh Result

Entry of default judgment would not be harsh or result in substantial prejudice to CCT. CCT did not answer the Complaint or otherwise appear. Further, CCT received ample notice of the suit: Weisz filed her Complaint on June 6, 2023, (Dkt. #1), and summons was returned executed on January 9, 2024 (Dkt. #7) And taking the well-pleaded facts as true, Weisz has asserted a valid cause of action. *Lindsey*, 161 F.3d at 893. Furthermore, Weisz properly requested entry of default in its favor on February 2, 2024 (Dkt. #9). Thus, default judgment is not unusually harsh because CCT has had ample opportunity to respond after receiving notice of this action.

Moreover, because CCT's failure to file responsive pleadings "threatens to bring the adversary process to a halt," Weisz has experienced prejudice "in pursuing its rights afforded by law." *Ins. Co. of the W. v. H&G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D.

Tex. Oct. 5, 2011) (citation omitted); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citation omitted). Accordingly, the record supports a finding that a default judgment would not be harsh or result in substantial prejudice to CCT.

### iii.   Grounds for Default Judgment

The grounds for default judgment are clearly established. Default occurs when a defendant fails to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *N.Y. Life Ins.*, 84 F.3d at 141. The record indicates that Weisz perfected service of process on CCT on April 9, 2024 (Dkt. #16). Therefore, CCT was required to serve an Answer to the Complaint or otherwise respond. However, as of this date, CCT has not answered or filed any responsive pleadings to the request for entry of default or the present Motion for Default Judgment. When a defendant's failure to respond is "plainly willful, as reflected by [a defendant's] failure to respond to either summons and complaint, the entry of default, or motion for default," then grounds for default are clearly established. *Graham*, 2017 WL 2600318 at *2 (alteration in original) (citation omitted). Thus, the court finds that the grounds for default judgment against CCT are clearly established.

### iv.   Excusable Neglect or Good Faith Mistake

The record also reflects that CCT did not default due to excusable neglect or a good faith mistake. Again, the record reflects that Weisz properly served CCT (Dkt. #7). CCT did not respond, nor did it offer evidence that the unresponsiveness was due to a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Further, nothing in the record indicates that Weisz has contributed to the delay of this action or otherwise given the court any reason to set aside the

clerk's entry of default. Accordingly, Weisz has met the procedural requirements for default judgment.

### b. Basis for Default Judgment in the Pleadings

Having determined that default is procedurally warranted, the court must now determine if there is a sufficient basis for judgment. *Nishimatsu*, 515 F.2d at 1206. Although CCT, at this stage, is deemed to have admitted the allegations set forth in the Complaint, the court must review the pleadings to determine whether the Complaint presents a sufficient basis for relief. *Id.* The Fifth Circuit "draw[s] meaning from the caselaw on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citation omitted). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted)). This "low threshold" pleading standard "is less rigorous than that under Rule 12(b)(6)." *Cunningham v. Crosby Billing Servs., Corp.*, No. 4:18-CV-00043-ALM-CAN, 2018 WL 6424792, at *4 (E.D. Tex. Oct. 14, 2018).

Weisz, in her Complaint, states that CCT "violated the FLSA by failing to pay Weisz, a non-exempt sales representative, in accordance with the guarantees and protections of the FLSA," specifically overtime pay (Dkt. #1 at pp. 1, 5). As such, accepting Weisz's allegations as true, CCT violated the FLSA by failing to pay Weisz overtime wages.

9

### c. Form of Relief

Having determined that there is basis for default judgment in the pleadings, the court must now determine what form of relief, if any, Weisz is entitled to. "A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197 at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002)). A hearing or detailed affidavits establishing the facts necessary to award damages are usually required unless the amount of damages is capable of mathematical calculation by reference to the pleadings and supporting documents. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Here, Weisz requests unpaid back wages, liquidated damages, litigation expenses and costs, injunctive relief, pre- and post-judgment interest, and attorney's fees (Dkt. #1 at p. 6). The court finds that Weisz's affidavits are sufficiently detailed such that the court can determine the damages award without a hearing.

#### i. Back Wages

As is relevant here, the FLSA requires employers to pay each covered employee time and a half the employee's regular rate of pay for hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1). Weisz alleges that she worked for CCT as a covered employee between April 1, 2019, and March 14, 2023 (Dkt. #10 at p. 4). Weisz further alleges that she regularly worked more than 40 hours per week during two periods: October 1, 2020–December 12, 2021, and May 27, 2022–October 12, 2022 (Dkt. #10 at p. 5).

During the first period of overtime, Weisz alleges that she worked approximately 52.5 hours per week and that her pay fluctuated depending on how many hours per week she worked (Dkt. #10 at p. 5). As such, Weisz alleges that she earned approximately $1,065.00 per week during

10

the first period of overtime (Dkt. #10 at p. 5). Weisz further alleges that this amount was only intended to compensate her for working 40 hours per week (Dkt. #10 at p. 5; Dkt. #15 at p. 2).

During the second period of overtime, Weisz alleges that she worked approximately 56 hours per week as a salaried employee (Dkt. #10 at p. 6; Dkt. #15 at p. 2). Weisz alleges that CCT paid her $1,000 per week (Dkt. #10 at p. 5). Weisz further alleges that she worked the same number of hours each week and that her salary was only intended to compensate her for 40 hours per week (Dkt. #10 at p. 5; Dkt. #15 at p. 2).

Weisz argues that, for both periods, because the parties contemplated that Weisz's weekly pay was to compensate her only for 40 hours of work per week, the court should apply the "time-and-a-half" ("TAAH") calculation method as opposed to the Fluctuating Work Week ("FWW") method (Dkt. #5). To calculate TAAH, the plaintiff must "divide the total wages paid to them each week by 40 hours to arrive at the regular rate. The overtime rate is then one and a half times the regular rate. That overtime rate is then multiplied by all hours worked by each Plaintiff in excess of 40 hours per week to arrive at the proper amount owed." *Tolentino v. C & J Spec-Rent Servs. Inc.*, No. CIV.A. C-09-326, 2010 WL 2735719, at *1 (S.D. Tex. July 12, 2010). By contrast, calculating overtime using the FWW method involves "dividing the actual hours worked each workweek into the fixed salary. This results in a determination of the regular rate of pay ... for that workweek. The overtime payment for that week is then determined by multiplying all hours over 40 in the workweek by [one-half] the regular rate for that workweek." *Id.*

The correct calculation method depends on the nature of the employment arrangement. "The FWW is an employment arrangement in which an employee receives a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week." *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). "To use the fluctuating-workweek method,

11

employees' hours must change on a week-to-week basis, and employees must receive the fixed salary even when they work less than their regularly scheduled hours." *Fraser v. Patrick O'Connor & Assocs., L.P.*, 954 F.3d 742, 748 (5th Cir. 2020). "The question of whether an employer and employee agreed to a fixed weekly wage for fluctuating hours is a question of fact." *Black*, 732 F.3d at 498. "The parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment must both be taken into account in determining whether the parties agreed that the employee would receive a fixed salary as compensation for all hours worked in a week, even though the number of hours may vary each week." *Id.* at 499 (citation omitted).

  The court finds that the TAAH calculation is the appropriate calculation method for both periods of overtime. During the first period of overtime, Weisz alleges that her hours fluctuated and that she was paid based on how many hours she worked (Dkt. #10 at p. 5). During the second period of overtime, Weisz alleges that she was paid a fixed salary, but that she worked the same number of hours each week (Dkt. #10 at p. 6; Dkt. #15 at p. 2). Thus, Weisz's pleadings make clear that for both periods of overtime, her "hours did not change on a week-to-week basis" or she did not "receive the fixed salary even when [she] worked less than [her] regularly scheduled hours." *Fraser*, 954 F.3d at 748. Moreover, Weisz lodged a complaint with CCT when she was required to work over 40 hours per week without additional compensation (Dkt. #15, Exhibit 1). Such evidence demonstrates that the parties were not in agreement that Weisz was to receive a fixed salary regardless of how many hours she worked. *See Black*, 732 F.3d at 501 ("Black's conduct in her continued protests of SettlePou's failure to compensate her for her overtime hours . . . shows that she did not agree that her fixed weekly salary should compensate her for all

of the hours she worked each week."). Accordingly, the TAAH method is appropriate for calculating the amount of overtime Weisz is entitled to.

Applying the TAAH calculation method, the court finds that Weisz is entitled to $30,953.50 in unpaid overtime for the first period. 29 U.S.C. § 207(a)(1). Weisz alleges that she worked 52.5 hours per week and that she earned approximately $1,065.00 per week (Dkt. #10 at p. 5). Taking the total wages paid, $1,065.00, divided by 40 hours, Weisz's regular rate of pay was $26.63 per hour. *Tolentino*, 2010 WL 2735719 at *1. Taking the regular rate multiplied by one and a half, Weisz's overtime rate of pay was $39.94. *Id.* Taking the overtime rate multiplied by the 12.5 hours Weisz worked in excess of 40 hours per week, Weisz is entitled to $499.25 per week in overtime pay. *Id.* Taking that amount multiplied by the 62 weeks in the first period of overtime, Weisz is entitled to $30,953.50 in overtime pay. *Id.*

The court also finds that Weisz is entitled to $11,400.00 in unpaid overtime for the second period. 29 U.S.C. § 207(a)(1). Weisz alleges that she worked 56 hours per week and earned $1,000.00 (Dkt. #10 at p. 5). Taking the total wages paid, $1,00.00, divided by 40 hours, Weisz's regular rate of pay was $25.00 per hour. *Tolentino*, 2010 WL 2735719 at *1. Taking the regular rate multiplied by one and a half, Weisz's overtime rate was $37.50. *Id.* Taking the overtime rate multiplied by the 16 hours Weisz worked in excess of 40 hours per week, Weisz is entitled to $600.00 per week in overtime pay. *Id.* Taking that amount multiplied by the 19 weeks in the second period of overtime, Weisz is entitled to $11,400.00 in overtime pay. *Id.* Thus, Weisz is entitled to a total of $42,353.50 in overtime pay.

### ii. Liquidated Damages

Next, Weisz argues that she is entitled to liquidated damages. The FLSA provides that an employer who violates the requirement to pay overtime compensation "shall be liable to the

13

employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Although the language of § 216(b) is mandatory, Congress thereafter added a provision that grants the district court the sound discretion not to award liquidated damages if the employer shows (1) 'that the act or omission giving rise to such action was in good faith' and (2) "'that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'" *Dalheim v. KDFW-TV*, 712 F. Supp. 533, 535 (N.D. Tex. 1989) (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979)). "The burden of proving that the two-prong test has been met is upon the employer, who has the plain and substantial burden of persuading the court by proof that its failure to obey the statute was both in good faith and was predicated upon such reasonable grounds that it would be unfair to impose more than a compensatory verdict." *Id.* at 536 (cleaned up). Put simply, "[t]he defense requires plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it." *Id.* (citing, *inter alia, Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987)). "The burden is a difficult one to meet; double damages are the norm, single damages the exception." *Id.* (citation omitted).

      The court finds that Weisz is entitled to liquidated damages. CCT has not carried the "plain and substantial burden" of demonstrating that it failed to obey the FLSA in good faith. Conversely, Weisz's evidence, particularly the email from Weisz, wherein she lodged a complaint with CCT because she was required to work over 40 hours per week without additional compensation (Dkt. #15, Exhibit 1), demonstrates that CCT was on notice that it may not have been in compliance with the FLSA. *See Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) ("If an employer suspects that it is out of compliance with the FLSA, it cannot act in good faith.") (cleaned up). As such, like establishing that there are grounds for default judgment, CCT's failure to respond

is "plainly willful" and thus not in good faith. *Graham*, 2017 WL 2600318 at *2. The court therefore finds that Weisz is entitled to liquidated damages in the amount equal to the amount owed in overtime compensation, $42,353.50.

          iii. *Attorney's Fees & Costs*

Weisz seeks attorney's fees in the amount of $11,235.00 (Dkt. #10 at p. 10). "Reasonable attorney's fees are mandatory" when a court finds that an employer has violated § 206." *Steele*, 826 F.3d at 249 (citation omitted). Having found that CCT violated § 206, the court next determines whether the requested fees are reasonable. The Fifth Circuit uses the lodestar method to calculate an appropriate attorney's fee award under the FLSA. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.* "There is a strong presumption of the reasonableness of the lodestar amount." *Black*, 732 F.3d at 502.

Here, attorney Douglas B. Welmaker represents Weisz. Mr. Welmaker states that he has expended approximately 21.90 hours on this case (Dkt. #10, Exhibit C). Mr. Welmaker further states that his hourly rate is $650.00 for an initial total of $14,235.00 (Dkt. #10, Exhibit C). Mr. Welmaker deducted $3,000.00 from the actual time spent "due to the exercise of billing judgment." (Dkt. #10, Exhibit C). Having reviewed this calculation and considered the factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), as well as Mr. Welmaker's $3,000.00 write-off, the court finds that the attorney's fee in the amount of $11,235.00 is reasonable.

Weisz also seeks $1,130.85 to include "costs expended to file suit in federal district court ($402.00) and costs for service of process ($728.85)." (Dkt. #10 at p. 10). "Section 216(b) [] requires the district court to order the defendant to pay the costs of the action." *Steele*, 826 F.3d at

249 (citing 29 U.S.C. § 216(b)). As such, Weisz is also entitled to $1,130.85 for the costs of litigating this action.[1]

## CONCLUSION AND RECOMMENDATION

The court recommends that Plaintiff Nicole Weisz's Motion for Default Judgment as to Defendant CCT Holdings, LLC (Dkt. #10) be **GRANTED.** The court further recommends that Plaintiff's claims against Defendant Michael Eymer be **DISMISSED WITHOUT PREJUDICE**. The court further recommends that Plaintiff's claims against Defendant CCT Holdings, LLC be **DISMISSED WITH PREJUDICE.** The court finally recommends that Plaintiff be awarded the following damages: 1) $42,353.50 in unpaid wages; 2) $42,353.50 in liquidated damages; 3)$11,235.00 for reasonable and necessary attorney's fees; and 4) $1,130.85 for costs of court.[2]

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile*

---

[1] In her Complaint, Plaintiff moved for injunctive relief. Because Plaintiff did not request injunctive relief in her Motion for Default Judgment, the court need not address this issue.
[2] Because Plaintiff did not seek pre- or post-judgment interest in her Motion for Default Judgment, the court need not consider these issues.

*Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 12th day of March, 2025.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE